**Opinion filed February 21, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00331-CR

_____

### JESUS MANUEL NAVARRETTE, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**
**Ector County, Texas**
**Trial Court Cause No. A-36,468**

### MEMORANDUM OPINION

The jury convicted Jesus Manuel Navarrette of two counts of aggravated sexual assault and assessed his punishment at confinement for seventy-five years in each count. *See* TEX. PENAL CODE ANN. § 22.021 (West Supp. 2013). The trial court sentenced him accordingly and ordered his sentences to run concurrently. Appellant challenges his conviction and punishment in five points of error. We affirm.

*Background*

E.W., the complainant, testified that she and her husband got into an argument while driving to a local bar in Odessa to have a few beers. E.W. got out of the car and began walking. She thought that her husband would come back and get her, but he did not. She continued walking and looked for a phone, but could not find one; she did not have a cell phone. While she was in the parking lot of a convenience store, two men drove up to her and asked her if she wanted a ride. The passenger said that he recognized her from where she worked; she did not know Appellant, the driver of the vehicle. E.W. accepted the ride and also accepted a beer that they offered her.

They drove to a home that Appellant owned, sat on the porch, drank a beer, and talked. The passenger said he needed to go check on his mother and left. Heavy rain began to fall, and Appellant told E.W. to stand underneath the doorway of the home. Once underneath the doorway, Appellant told her that he wanted to "f--k." She said she was not like that. Appellant grabbed her from behind, threw her on a bed inside the door, bit her, and ripped off her clothes. Then he shoved his hands inside of her vagina, penetrated her vagina with his penis, and tried to force her to perform oral sex on him. E.W. testified that Appellant grabbed her by the hair, put her in front of him, told her to give him a "blow job," and threatened to kill her if she bit him. She screamed and tried to get away.

Appellant stopped, calmed down, and apologized for hurting her. He told her that he could take care of her and could provide her with a home if she would stay with him. She agreed but said she needed to go tell her cousin where she was so that he did not come looking for her. Appellant and E.W. got dressed and began walking to E.W.'s cousin's house. While they were walking, E.W. took off running. She went to a nearby house and called her cousin to come get her. Her

cousin came and picked her up, took her back to his house, and convinced her to go to the police to report the incident.

A police officer accompanied her to Midland Memorial Hospital. She was examined by a sexual assault nurse examiner (SANE). The SANE testified that E.W. had bruises and lacerations around her vaginal area. She was unable to perform an internal exam on E.W. because E.W. was in too much pain. E.W. also had bite marks and bruising on her chin, shoulder, and breast.

Appellant testified that, after he and his cousin picked up E.W. from the convenience store, she asked him if he could drive her to the Zodiac Club so that she could buy crack cocaine. He drove her to the club, and she purchased $200 of crack. When they arrived at his house, each of them smoked some of the crack. They remained in the car, drank a beer, talked, and listened to music. After Appellant and E.W. kissed a few times, Appellant's cousin said he was going to give them some privacy and left.

According to Appellant, he and E.W. continued to kiss. While they were "making out," E.W. grabbed Appellant's penis and told him that he "had a big one." She performed oral sex on him; he performed oral sex on her; and they had vaginal intercourse in the backseat of the car. They continued to have sex throughout the night. They had sex in the car and outside in the rain. According to Appellant, although E.W. said it hurt because Appellant's penis was big, she never said that she did not want to keep going, and she got on top of him several times. They also continued to drink and smoke crack. Eventually, they ran out of drugs and alcohol and began coming down from their high. E.W. panicked because she was supposed to sell the crack and give the money to her cousin. She told Appellant that he needed to pay her for the drugs and that, if he did not, she would claim that he raped her. Appellant tried to calm her down and told her that he would give her money for the drugs. He walked her to a friend's house and told her to meet

3

him back at his house later that day so that he could give her the money. As he was leaving, he saw her cousin approach and yell at her. Her cousin threw her to the ground. Appellant never saw either one of them again. He was later arrested for aggravated sexual assault of E.W.

*Sufficiency of the Evidence*

We will first address Appellant's challenge to the sufficiency of the evidence to support his conviction as to the second count of aggravated sexual assault. The second count alleged that Appellant penetrated E.W.'s mouth with his sexual organ. We review the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (West 2007), art. 38.04 (West 1979). As such, the jury is entitled to accept or reject any or all of the testimony of any witness. *Adelman v. State*, 828 S.W.2d 418, 421 (Tex. Crim. App. 1992).

Appellant specifically argues that there was insufficient evidence of penetration as to count two. He points to E.W.'s testimony, E.W.'s statements to police, and the SANE's testimony for support. Even if this evidence, standing alone, was not sufficient to prove that penetration of E.W.'s mouth by Appellant's sexual organ occurred, there was additional testimony on the penetration issue. That additional testimony came from Appellant. He testified that E.W. performed

4

oral sex on him. Therefore, the evidence presented was sufficient to show that Appellant penetrated E.W.'s mouth with his sexual organ. As the sole judge of the credibility of the witnesses, the jury was free not to believe Appellant's testimony that E.W. consensually performed oral sex on him. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We overrule Appellant's third point.

In Appellant's fourth point, he argues that, if we find the evidence to be insufficient under his third point, he is entitled to a new punishment hearing on the first count of aggravated sexual assault. Because we have found that the evidence was sufficient to support count two, Appellant's fourth point is moot.

### *Mistrial*

Appellant asserts in his first point that the trial court erred when it denied his request for a mistrial after the trial court instructed the jury to disregard the testimony of one of the State's punishment witnesses because she had violated the witness exclusion rule.[1] A motion for a mistrial must be timely and specific in order to preserve error for appellate review. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex. Crim. App. 2007). "A motion for mistrial is timely only if it is made as soon as the grounds for it become apparent." *Id.* Here, Appellant did not move for a mistrial immediately after the trial court instructed the jury to disregard the witness's testimony but, instead, waited until after the State rested. Between the time the court instructed the jury to disregard and the time Appellant moved for a mistrial, the State offered two exhibits and presented testimony from two other witnesses. Because Appellant did not timely present his request for a mistrial to the trial court, he failed to preserve error for review. TEX. R. APP. P. 33.1. We overrule Appellant's first point.

---

[1]*See* TEX. R. EVID. 614 ("At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion.").

*Charge Error*

In his second point, Appellant argues that the trial court improperly commented on the weight of the evidence when it instructed the jury that "intent may be inferred from acts done, if any, or words spoken, if any." The State concedes that this was an improper comment on the weight of the evidence under *Brown v. State*, 122 S.W.3d 794 (Tex. Crim. App. 2003). In *Brown*, the court held that the trial court erred when it instructed the jury that "intent or knowledge may be inferred by acts done or words spoken." *Brown*, 122 S.W.3d at 801–03. Thus, in this case, the trial court erred because it gave a similar instruction.

We must now address whether the error was harmful. Because Appellant did not object to the jury charge, we look to whether the error caused egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). We must review the entire jury charge, the evidence, the arguments of counsel, and any other relevant information in order to determine whether the error was so egregious that Appellant was denied a fair and impartial trial. TEX. CODE CRIM. PROC. ANN. art. 36.19 (Vernon 2006); *Almanza*, 686 S.W.2d at 171.

Here, the jury charge does not emphasize the instruction, and the instruction is only found once within the charge. Neither counsel for the State nor counsel for the defense emphasized the instruction during closing arguments. Although the evidence at trial was sharply disputed, we do not agree with Appellant's assertion that the instruction undermined the heart of his defensive theory. His theory was that the sex was consensual and lasted all night long. Under either the State's theory or Appellant's theory, the jury would have naturally considered the actions and words of the parties involved. As the court stated in *Brown*, "[t]he instruction is mild, neutral, and an obvious common-sense proposition." *Brown*, 122 S.W.3d at 803. Thus, we cannot say that Appellant suffered egregious harm. We overrule his second point.

*Ineffective Assistance of Counsel*

In his final point, Appellant argues that his counsel was ineffective because he (1) failed to object to the prosecutor's references to E.W. as the "victim," (2) failed to investigate Appellant's prior conviction to know whether he was eligible for community supervision, (3) failed to present testimony from Appellant's family during the punishment phase, (4) failed to engage in a meaningful voir dire examination, and (5) introduced E.W.'s written statement and police reports for no discernible reason. In order to determine whether Appellant's trial counsel rendered ineffective assistance at trial, we look to whether Appellant has shown that his counsel's representation fell below an objective standard of reasonableness and, if so, whether Appellant has shown that there is a reasonable probability that the result would have been different but for trial counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 55–57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and Appellant must overcome the presumption that, under the circumstances, the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Where the record is silent, we cannot speculate on trial counsel's strategy. *Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999). An allegation of ineffective assistance of counsel must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness. *Id.* Generally, the record on direct appeal will not be sufficient to show that trial counsel's performance was so lacking as to overcome the presumption of reasonable conduct. *Id.* at 813–14.

Appellant has failed to overcome the presumption that his trial counsel's conduct fell within the wide range of reasonable professional assistance as to his

first, third, fourth, and fifth grounds of ineffective assistance. Counsel may have chosen not to object to the prosecutor's references to E.W. as the "victim" in order not to draw the jury's attention to the references. Counsel may also have determined not to present testimony from Appellant's family members for a number of reasons, such as concerns about their credibility. Appellant did not raise the issue of ineffective assistance in his motion for new trial; thus, the record is silent as to his counsel's trial strategy in choosing not to object to the references to E.W. as the "victim" and in choosing not to present testimony from Appellant's family members during the punishment phase.[2]

As to counsel's voir dire examination, the record shows that counsel commented at the beginning of his voir dire that, because the prosecutor had done a good job of going through issues, he did not need to cover everything in detail like the prosecutor did. Although defense counsel did not single anyone out when he asked questions, he did ask the panel members, in general, if they understood that an indictment did not mean that Appellant was guilty, if anyone was biased as a result of knowledge or experience with a sexual assault, if anyone was biased toward the State or Appellant, if everyone could be fair and impartial, and if they had something going on in their life that would affect their ability to serve on the jury. Counsel also discussed several issues during his voir dire, including the following: the meaning of the indictment, bias, fairness, standing in judgment of others, beyond a reasonable doubt, presumption of innocence, defendant's right to testify or to remain silent, and how television shows can impact what jurors think they should see in evidence. In addition, defense counsel told the panel members that they should not convict someone just because they did not like the person and that they should not let their first impression of Appellant decide the case but,

---

[2]Appellant raised two issues in his motion for new trial: (1) that the verdict was contrary to the law and the evidence and (2) that the trial court should grant a new trial in the interest of justice. The trial court denied Appellant's motion.

instead, should give him a chance. We cannot conclude from our review of the record that defense counsel did not conduct a meaningful voir dire examination. Counsel covered many issues with the panel and asked several questions. Furthermore, as he indicated to the jury panel, he could have gathered enough information from the State's voir dire to exercise Appellant's peremptory strikes intelligently and to determine the basis for any challenge for cause.

Appellant also argues that there was no strategic reason for counsel to introduce E.W.'s written statement, the detective's offense report, or the intake officer's report. Generally, we would agree. However, here, the record shows that counsel used each one of those documents to show inconsistencies in E.W.'s story, including whether she knew the passenger in Appellant's car, whether she heard someone yelling for her outside while the assault was taking place, whether E.W. reported to police that she had purchased and used drugs that night, and whether she told her husband that she had a friend that lived nearby and that she was going to stay with her friend for the evening. Counsel also went through E.W.'s statement with Appellant and asked Appellant to identify what parts of her statement were true and what parts were not true. During closing arguments, counsel encouraged the jury to read through the documents and look at the inconsistencies. Based on counsel's use of E.W.'s statement and the police reports during the trial, we cannot say that counsel's introduction of these documents was not within the wide range of reasonable professional assistance.

Appellant alleges in his second ground of ineffective assistance of counsel that his counsel was ineffective when he failed to discover that Appellant had been previously convicted of a felony and was therefore ineligible for jury-recommended community supervision. Appellant also contends that his counsel was ineffective when he stipulated to the prior conviction because he failed to require the State to prove the conviction. Before the commencement of the trial,

9

Appellant elected for the jury to assess punishment. He also filed an application with the court for community supervision, in which we assume he swore that he had not been previously convicted of a felony offense.[3] Prior to the commencement of the punishment phase, the State notified the trial court that it had discovered that Appellant had been convicted of a prior felony. Apparently, neither the State nor defense counsel realized that Appellant's prior conviction for possession of marihuana was a felony offense. Defense counsel represented to the court that the State had notified Appellant of the arrest but that the notification did not indicate that the offense was a felony or that it resulted in a conviction. Defense counsel assumed that it was a misdemeanor.

The State gave Appellant two options: (1) take the stand and face being cross-examined about the prior felony conviction or (2) stipulate to the prior felony conviction. The State represented to the court that it did not have a penitentiary packet for the conviction because Appellant successfully completed five years' probation. Nor did the State have a judgment of conviction. Appellant chose to stipulate to the prior felony conviction, and the trial court allowed Appellant to withdraw his application for community supervision. Subsequently, the State moved to enter the stipulation into evidence, and defense counsel responded that Appellant had stipulated to the prior felony conviction for possession of marihuana.

Even if we assume that Appellant's counsel was deficient when he failed to discover that Appellant was ineligible for jury-recommended community supervision or when he told the jury that Appellant had stipulated to the prior conviction, Appellant has failed to show that the result of the proceeding would have been different but for his counsel's errors. Appellant argues that the

---

[3]The trial court's docket sheet notes that Appellant applied for probation; however, the application itself was later withdrawn and is not a part of the appellate record.

cumulative effect of counsel's errors caused a breakdown in the adversarial process. However, we have determined that counsel's performance was not deficient as to Appellant's first, third, fourth, and fifth grounds of ineffective assistance. Thus, Appellant has not shown multiple errors that, when considered cumulatively, are sufficient to undermine the outcome of the trial. Appellant also argues that the late discovery of his prior felony conviction undermined the punishment strategy that he had maintained since the commencement of the trial. However, Appellant does not explain what this punishment strategy was, how the late revelation undermined that strategy, or what the new punishment strategy would have been if counsel had discovered the prior felony conviction earlier.[4]

We hold that Appellant has failed to show that his counsel's representation fell below an objective standard of reasonableness as to Appellant's first, third, fourth, and fifth grounds of ineffective assistance of counsel and that Appellant has failed to show that there is a reasonable probability that the result of the proceeding would have been different but for his trial counsel's errors as alleged in his second ground of ineffective assistance. We overrule Appellant's fifth point.

*This Court's Ruling*

We affirm the judgment of the trial court.


February 21, 2014                                                    JOHN M. BAILEY

Do not publish. *See* TEX. R. APP. P. 47.2(b).          JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

[4]We note that a person convicted of aggravated sexual assault is not eligible for judge-ordered community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § 3g(a)(1)(E) (West Supp. 2013). Therefore, upon conviction, Appellant was not eligible for community supervision regardless of whether his punishment was assessed by the jury (because he had a prior felony conviction) or assessed by the trial court (because of the nature of the offense).